UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| MICHAEL P. WICKMAN<br>333 Kress Court<br>Green Bay, Wisconsin 54301,<br><br>and<br><br>TERRY L. WICKMAN<br>333 Kress Court<br>Green Bay, Wisconsin 54301,<br><br>        Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY<br>COMPANY<br>1 State Farm Plaza<br>Bloomington, Illinois 61710-0001,<br><br>        Defendant. | **AMENDED COMPLAINT**<br><br>Case No.: 07-C-352 |

The Plaintiffs, Michael P. Wickman and Terry L. Wickman, by their attorneys, Godfrey & Kahn, S.C., for their Amended Complaint, allege as follows:

## PARTIES

1. The Plaintiffs, Michael P. Wickman and Terry L. Wickman (collectively, "Wickmans"), are husband and wife who live at 333 Kress Court, Green Bay, Wisconsin 54301 and are citizens and residents of the State of Wisconsin.

2. The Defendant, State Farm Fire & Casualty Company ("State Farm"), is an Illinois insurance corporation which is authorized to do business in the State of Wisconsin, and does substantial business in Brown County, Wisconsin.

## JURISDICTION AND VENUE

3. State Farm is subject to personal jurisdiction in the State of Wisconsin pursuant to § 801.05, Wis. Stats., because, among other things, State Farm does substantial business in Wisconsin and because the fire loss which gives rise to this action occurred in Wisconsin.

4. This Court has jurisdiction pursuant to 28 U.S.C., § 1332, because of diversity of citizenship and the amount of dispute is in excess of $75,000.00.

5. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C., § 1391, because the fire loss which gives rise to the Wickmans' claim occurred in Brown County, Wisconsin.

6. This case is filed in the Green Bay Division of the United States District Court for the Eastern District of Wisconsin because the case has the greatest nexus to Brown County, Wisconsin.

## CLAIM FOR BREACH OF INSURANCE CONTRACT

7. The Wickmans own property located at 333 Kress Court, Green Bay, Wisconsin 54301, at which they constructed a home where they live.

8. The Wickmans purchased Homeowners Insurance Policy No. 49-F275-879 from State Farm which was in full force and effect at all times relevant to this case and which provided coverage for the home the Wickmans owned at 333 Kress Court, Green Bay, Wisconsin.

9. At the time of the fire loss described in Paragraph 10, below, State Farm Policy No. 49-F275-879 provided coverage in the amount of $840,675.00 for replacement of the dwelling owned by the Wickmans on a replacement value basis. The Insurance Policy also provided for an increased dwelling limit of an additional twenty percent (20%) ("Option I.D. Coverage") if the amount actually spent by the Wickmans to repair or replace their home exceeded the limit of liability shown in the declarations for the dwelling. As a result, the

available insurance on the Wickmans' home at the time of the fire loss was $1,008,810.00. In addition, State Farm Policy No. 49-F275-879 provides additional coverage for debris removal of property covered by an insured loss.

10. On May 17, 2005 the Wickmans' home at 333 Kress Court in Green Bay, Wisconsin was destroyed by fire.

11. The fire loss suffered by the Wickmans as described in Paragraph 10, above, is covered by the Homeowners Insurance Policy they purchased from State Farm.

12. The loss suffered by the Wickmans as described in Paragraph 10, above, resulted in the total loss of their home as that term is used in Wisconsin's Valued Policy Law (§ 632.05(2), Wis. Stats). As a result, State Farm is contractually obligated to pay the Wickmans the policy limits for the dwelling coverage of Policy No. 49-F275-879.

13. The Wickmans have rebuilt their home at 333 Kress Court in Green Bay, Wisconsin with new materials of like size, kind and quality to the home which was destroyed by fire on May 17, 2005 at a cost which exceeds the policy limit of dwelling coverage of State Farm Policy No. 49-F275-879, including the coverage provided by the Option I.D. Coverage.

14. State Farm has failed and refused to pay the policy limits for the dwelling coverage of Policy No. 49-F275-879, including the Option I.D. Coverage, based on its incorrect allegation that the Wickmans' home was repairable. As a result, State Farm has paid only $742,059.79 to the Wickmans under the dwelling coverage of the insurance policy. State Farm has also failed and refused to pay the Wickmans for debris removal for the property damaged as a result of the fire loss.

15. The amount of $752,059.79 State Farm alleges it would have cost to repair the Wickmans' home is substantially less than the amount it actually would have cost the Wickmans to repair their home if it had been repairable. On information and belief, the cost of repair would have exceeded the policy limits of State Farm Policy No. 49-F275-879.

3
Case 1:07-cv-00352-WCG    Filed 02/19/08    Page 3 of 9    Document 16

16. State Farm has breached its obligations under the Homeowners Insurance Policy by failing to pay the entire policy limits under the Dwelling Coverage portion of the policy, including the Option I.D. Coverage, and by failing to reimburse the Wickmans for debris removal.

17. The Wickmans have performed all obligations prerequisite to recovery of the entire policy limits, including those provided by the Options ID coverage.

## CLAIM FOR BAD FAITH BREACH OF INSURANCE CONTRACT

18. There are realleged and incorporated by reference all of the allegations contained in Paragraphs 1-17 above.

### A. State Farm's Failure to Conduct a Neutral Investigation of The Fire Loss.

19. State Farm assigned adjusters and property damage appraisers who were not competent to evaluate the Wickmans' damages caused by the May 17, 2005 fire.

20. Without checking his credentials, State Farm relied upon recommendations made by an outside consultant, Scot Van Handel ("Van Handel"), who did not have the qualifications or competence to evaluate the repair costs to the Wickmans' home.

21. State Farm relied on a computer program known as Xactimate which it knew, or should have known, did not provide an accurate estimate of the repair costs for the Wickmans' home.

22. State Farm made no effort to test the reliability of the Xactimate estimate by conferring with the Wickmans' builder, Steve Kassner, or obtaining firm bids on the repair work from qualified contractors.

23. As part of the evaluation of the damages to the Wickmans' home, State Farm hired Sullivan's Cleaning & Restoration Service ("Sullivan's") to open up several areas of the walls in the Wickmans' home, but then failed to document the damages which were observed in the areas opened up by Sullivan.

4

24. Without good reason, State Farm rejected the opinion by Van Handel that additional items of the Wickmans' house required repair as a result of the fire loss, including replacement of the entire roof and replacement of all of the windows.

25. State Farm attempted to coerce Van Handel into providing a lower estimate of repair costs by contacting Van Handel's boss, Patrick Sullivan.

26. State Farm conducted numerous inspections of the Wickmans' home without notifying the Wickmans of the inspections or permitting the Wickmans to participate in the inspections.

27. State Farm failed to follow its own policies and procedures in connection with documenting its claims procedures, including but not limited to, its inspections of the Wickmans' home and observations made of the damages.

### B. State Farm Ignored § 66.0143 Wis. Stat.

28. In its investigation of the Wickmans' fire loss claim, State Farm learned that the building inspector for the Village of Allouez had used the incorrect criteria under § 66.0413, Wis. Stat. for evaluating whether the Village of Allouez should order that the Wickmans' home be razed.

29. State Farm knew that the Wickmans' home qualified for an order to be razed under § 66.0413, Wis. Stat. because the cost of repair exceeded 50% of the assessed value of the home.

30. State Farm failed to inform either the Village of Allouez building inspector or the Wickmans that the Wickmans' house qualified for a order to be razed under § 66.0413, Wis. Stat.

31. If the Village of Allouez had applied the current criteria under § 66.0143, it would have ordered that the Wickmans' home be razed and State Farm would have been required to pay the policy limits to the Wickmans.

5

### C. State Farm's Failure to Make Timely Payment

32. On or before December 13, 2006, State Farm determined that it was obligated to pay the Wickmans approximately an additional $55,000 on their claim for the fire loss.

33. Although State Farm had already determined that an additional payment was required under the policy, it required the Wickmans to present additional information to document the additional payment.

34. State Farm delayed until March 20, 2007 to pay the additional approximately $55,000.

### D. State Farm's Failure to Communicate With the Wickmans

35. State Farm failed to keep the Wickmans adequately informed about its investigation of their fire loss, including, but not limited to:

    a. Failure to inform the Wickmans of the inspections of the Wickmans' home;

    b. Failure to inform the Wickmans that the Xactimate repair costs were "estimates" only;

    c. Failed to inform the Wickmans about the status of its investigation of subrogation claims;

    d. Failed to inform the Wickmans that it hired Sullivan's to open up several areas of the walls in the Wickmans' home to determine whether there were additional damages;

    e. Failure to inform the Wickmans that Van Handel determined that additional repairs of the home were required; and

    f. Failed to inform the Wickmans that repair costs were subject to increases based upon increased construction costs

### E. Deficiencies of State Farm's Policies and Procedures

36. State Farm's policies and procedures did not provide any method for determining whether the Wickmans' home suffered a "total loss" under Wisconsin's valued policy law, § 632.05(2), Wis. Stat.

37. State Farm made no effort to determine whether the damages to the Wickmans' home constituted a "total loss" under Wisconsin's valued policy law.

### F. State Farm's Spoliation of Evidence

38. Employees of State Farm who were responsible for evaluating the damages to the Wickmans' home took several sets of notes and photographs of the damages caused by the fire.

39. State Farm intentionally destroyed and/or discarded the notes and photographs.

40. Because State Farm destroyed and/or discarded the notes and photographs, the Wickmans are deprived of important discovery of the basis for State Farm's estimate of the repair costs.

### G. Delay in State Farm's Investigation of the Fire Loss

41. State Farm took control of the site of the Wickmans' home from May 17, 2005 until October 3, 2005 for purposes of its investigation and effectively limited the Wickmans' ability to evaluate their damages.

42. State Farm's delay in completing the investigation of the fire loss unnecessarily delayed the Wickmans' efforts to rebuild their home.

### H. State Farm's Conduct Constitutes Bad Faith

43. State Farm's conduct, described in Paragraphs 19-42, above, establish that State Farm did not conduct a neutral investigation of the fire loss as required by Wisconsin law.

44. State Farm's conduct, described in Paragraphs 19-42, above, establish that State Farm violated the standards for insurance claim settlement practices established by INS 6.11 of the Wisconsin Administrative Code.

45. The conduct of State Farm described in Paragraphs 19-42, above, establish that State Farm did not have a reasonable basis for denying payment of insurance benefits to the Wickmans.

46. The conduct of State Farm described in Paragraphs 19-42, above, establish State Farm's knowledge and/or its reckless disregard of the fact that it did not have a reasonable basis for withholding payments to the Wickmans.

### I. The Wickmans' Damages As a Result of State Farm's Bad Faith

47. As a consequence of State Farm's bad faith, the Wickmans suffered damages which include, but are not limited to,

    a. Legal costs, including attorney's fees which they have incurred and will incur, to obtain the benefits of their insurance policy with State Farm; and

    b. Increased construction costs and interest charges arising from the unreasonable delays in completion of State Farm's investigation.

48. State Farm's conduct, as described in Paragraphs 19-42, above, shows a wanton, willful and reckless disregard of the Wickmans' rights which justifies punitive damages in this case.

WHEREFORE, the Wickmans demand Judgment as follows:

A. For the recovery of the remaining policy limits of policy #49 F275-879 in the amount of $256,750.21;

B. For recovery of their damages in an amount to be determined by a jury for their damages caused by State Farm's bad faith, including but not limited to, their legal costs, including attorney's fees, and extra costs associated with rebuilding their home;

C. For pre-judgment interest as provided by Wisconsin law;

D. For the costs and disbursements of this action, and

E. For such other and further relief as the Court may deem just and equitable.

**THE WICKMANS REQUEST A JURY TRIAL.**

Dated this 19th day of February, 2008.

       GODFREY & KAHN, S.C.

      By:  /s/ Joseph M. Nicks
          Joseph M. Nicks
          State Bar No. 1016500
          Attorney for Plaintiffs
          333 Main Street, Suite 600
          P.O. Box 13067
          Green Bay, WI 54307-3067
          Telephone: (920) 432-9300
          Fax: (920) 436-7988
          Email: jmnicks@gklaw.com

gb157068_1